IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DARLENE CELLUCCI,                    :    CIVIL ACTION
                                     :    NO. 12-6038
          Plaintiff,                 :
                                     :
     v.                              :
                                     :
RBS CITIZENS, N.A., et al.,          :
                                     :
          Defendants.                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                         December 17, 2013


          Plaintiff Darlene Cellucci brings this employment
discrimination action against RBS Citizens Financial Group, Inc.
and its subsidiary, Citizens Bank of Pennsylvania.
(collectively, "Citizens Bank").  Cellucci claims that her
employment with Citizens Bank was terminated because of her age,
in violation of the Age Discrimination in Employment Act
("ADEA"), 29 U.S.C. § 621 et seq.  Citizens Bank has moved for
summary judgment, and, for the reasons that follow, the Court
will grant the motion in its entirety.

I.   **FACTUAL BACKGROUND**[1]

     Cellucci began working for Citizens Bank in 1999, at the age of 51.  Pl.'s Resp., Ex. C, Cellucci Dep. 81:13-15, 83:2-3, ECF No. 21-3.  She was soon promoted to branch manager of Citizens Bank's Broad and McKean Street location in Philadelphia, and she remained in that position until her employment was terminated in April 2012.  Id. at 76:3-9, 83:4-7.

     From 2008 to 2011, Cellucci was supervised by Brian Williams, a Citizens Bank regional manager.  Cellucci describes her relationship with Williams as "wonderful," and she has never accused him of age discrimination or unfairness of any kind. Id. at 83:22-24, 88:1-3; see also Pl.'s Resp. 6, ECF No. 21.  In February 2009, she received an annual performance review from Williams that gave her an overall rating of 3 out of 5, indicating that her objectives were "fully achieved."  Pl.'s Resp., Ex. E, 2009 Annual Performance Evaluation, ECF No. 21-5. A few months later, however, Williams gave her a verbal warning due to her branch's failure to meet minimum performance expectations for the previous six consecutive quarters.  Def.'s Mot. Summ. J., Ex. 4, Verbal Counsel Memo, ECF No. 20-4. Cellucci's 2010 performance review indicated similar problems;

---

[1]     In accordance with the summary judgment standard, the Court will recite the facts in the light most favorable to Cellucci, the nonmoving party, noting any factual disputes.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Williams assigned her a "2" rating, suggesting that development
was needed.  Def.'s Mot. Summ. J., Ex. 6, 2010 Performance
Review, ECF No. 20-6.  In particular, Williams noted that,
although Cellucci possessed "very strong leadership skills which
her team responds to," she "had a challenging year" with regard
to the quantitative sales benchmarks recorded on the branch's
"scorecard."  Id.

     In March of 2011, Williams transferred to a different
position, and Cellucci began reporting to Westton Geer, a new
regional manager.  Pl.'s Resp. 6; Def.'s Mot. Summ. J. 4, ECF
No. 20.  Soon after Geer took over, he called Citizens Bank's
Employee Relations Service Center ("ERSC") to discuss three
employees, including Cellucci, who had been rated a "2" on their
2010 performance reviews and had failed to achieve their
performance goals for the first quarter of 2011.  Pl.'s Resp.
32-33; Def.'s Mot. Summ. J., Ex. 8, ERSC Case No. 385907-0, ECF
No. 20-8.  ERSC recommended that each employee be placed on a
Performance Improvement Plan ("PIP").  ERSC Case No. 385907-0.

     Geer gave Cellucci her PIP on or around April 20,
2011.  Def.'s Mot. Summ. J., Ex. 10, Cellucci PIP, ECF No. 20-
10; Cellucci Dep. 106:24-107:7.  The PIP noted her performance
deficiencies, explained that she had sixty days to "demonstrate
immediate and sustained improvement," and advised that if her
performance did not improve she "may be subject to further

disciplinary action, up to and including termination." Cellucci PIP. Cellucci signed the PIP, but later called ERSC to clarify several aspects of it. In particular, Cellucci called to make sure that she had sixty days to improve her performance, as Geer told her she had only thirty days. ERSC Case No. 385907-0. Cellucci also claimed that some of her performance benchmarks were incorrect, and ERSC told her that her PIP would be amended if she provided the scorecards showing her actual results. Id. Cellucci did so, and it appears from ERSC records that her sales score was changed from 57% to 67%. Id.

One day after receiving her PIP, Cellucci went on a medical leave of absence to undergo knee surgery. Pl.'s Resp. 7; Cellucci Dep. 106:9-12. She returned from leave in July 2011, and shortly after her return she had an unpleasant conversation with Geer. According to Cellucci, Geer asked her when she was going to retire, and commented that she "probably had a fat 401(k) and a pension." Cellucci Dep. 94:1-3, 98:21-99:14. He also asked her about the retirement plans of two other employees, and told her that "the bank is changing and it needs new younger faces." Id. at 131:18-132:24; see also id. at 137:21-138:1. Cellucci responded that she did not appreciate those comments, that she was too young to retire, and that she could not afford to do so. Id. at 94:4-8, 133:1-10, 240:5-8. Nonetheless, Geer allegedly asked Cellucci about her retirement

4

plans several more times during the year prior to her

termination.**2**  Id. at 97:14-15.

_____

2       In her response to the motion for summary judgment,
Cellucci contends that Geer repeated all of his alleged age-
related comments – not just the retirement inquiries – "up until
the date of her termination."  Pl.'s Resp. 7 (emphasis omitted).
In support of that contention, she offers two pieces of
evidence: (1) her deposition testimony; and (2) a
"certification" she signed on August 27, 2013, after Citizens
Bank moved for summary judgment.  Id. (citing Cellucci Dep.
97:10-15, 100:16-18; Pl.'s Resp., Ex. A., Cellucci Cert., Aug.
27, 2013, at 2, ECF No. 21-1).

        The deposition testimony does not support Cellucci's
claim.  Rather, according to Cellucci's deposition, the only
allegedly discriminatory comments that Geer repeated after their
July 2011 conversation were his questions about her retirement
plans.  See Cellucci Dep. 97:10-15, 100:16-18.  She never
claimed during her deposition, despite repeated inquiries, that
Geer repeated his other comments about the size of her 401(k)
and needing "younger faces" at the office.  Her unambiguous
testimony was that Geer made several offensive comments during
their July 2011 conversation, and, after that conversation, he
asked about her retirement plans on several occasions.

        The late-arriving certification, on the other hand,
states that Cellucci was "subjected to continuous derogatory
comments by Geer about [her] age" during the last year of her
employment, and that "Geer repeatedly said that since the
banking industry is changing, he wants newer younger employees
to work in the branch, that he was looking for 'younger faces'
to work at [her] branch, that due to [her] age, [she] was set in
[her] ways, ... and that [she] must have a large 401(k)."
Cellucci Cert.  In other words, Cellucci now claims that the
conversation she allegedly had with Geer when she returned from
medical leave in July 2011 was a common, repeated occurrence
during her last year of employment – something she never claimed
during her deposition.  The affidavit is therefore not a mere
supplement identifying an additional incident that she failed to
recall during her deposition, but instead constitutes a material
change in her position.

        In light of the discrepancies between Cellucci's
certification and her earlier deposition testimony, the Court
will not consider the certification for purposes of resolving

In September 2011, Cellucci called ERSC with concerns about Geer's treatment of her.  Def.'s Mot. Summ. J., Ex. 13, ERSC Case No. 404723-0, ECF No. 20-16.  She again complained that Geer told her that she only had thirty days to improve her performance (rather than sixty), and she said that he had "offered her the option of stepping down to a Banker position." Id.  Noting that she only had two years left before she could

the instant motion.  Under a doctrine known as the "sham affidavit doctrine," trial judges may disregard affidavits that contradict earlier deposition testimony when deciding motions for summary judgment.  Jiminez v. All Am. Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007).  The doctrine is based upon the theory that an affidavit that contradicts an individual's earlier testimony "indicates only that the affiant cannot maintain a consistent story or is willing to offer a statement solely for the purpose of defeating summary judgment." Id. Therefore, when confronted with a contradictory affidavit, "it is proper for the trial judge to conclude that no reasonable jury could accord that affidavit evidentiary weight." Id.  Such a rule makes practical sense, as "prior depositions are more reliable than affidavits," which "are usually drafted by counsel, whose familiarity with summary judgment procedure may render an affidavit less credible." Id.

The Third Circuit uses a flexible version of the sham affidavit doctrine, pursuant to which courts generally should not disregard an affidavit when it is supported by independent evidence, but may do so "[w]hen a party does not explain the contradiction between a subsequent affidavit and a prior deposition." Id. at 254.  The subsequent affidavit need not directly contradict the earlier deposition testimony if there are other reasons to doubt its veracity, such as its inclusion of "eleventh-hour revelations" that could have easily been discovered earlier.  Id. at 254-55.

Under the circumstances of this case, the Court will disregard Cellucci's "certification," as its allegation of repeated age-related comments constitutes a material change in her testimony that she fails to explain (or even acknowledge).

retire, Cellucci explained that she felt Geer was "forcing her out the door."  Id.  As a result of Cellucci's call, ERSC explained to Geer that he needed to give Cellucci sixty days before "corrective action" could be taken.  Id.

Several months later, in January 2012, Geer issued Cellucci her 2011 performance review, which again rated her performance a "2."  Pl.'s Resp., Ex. G, 2011 Performance Review, ECF No. 21-7.  Geer explained that Cellucci had "worked and lived in the South Philly community for many years and ha[d] built strong relationships with customers that visit her branch," but that her "challenge will be continuing to adapt to the recent and ongoing changes in the banking industry."  Id. He further stated that Cellucci had "a well tenured team who could potentially be set in their ways and more challenging to coach."  Id.  He noted that, although Cellucci "works extremely hard at trying to achieve her goals," her efforts had "not shown up" in the scorecard benchmarks, and her branch still had "major" deficiencies in sales numbers.  Id.

In addition to issuing Cellucci her performance review, Geer also gave her a "final written warning," which gave her until March 10, 2012 to correct her performance deficiencies.  Pl.'s Resp. 8; see also Pl.'s Resp., Ex. J, Final Written Warning, ECF No. 21-10.  The warning noted that Cellucci had received a "2" on both her 2010 and 2011 annual performance

reviews (which categorized her as a "serial underperformer"),
that she had been administered a PIP, and that since the
issuance of the PIP she had failed to "meet the sales
expectations of [her] role as a branch manager in all key
areas."  Final Written Warning.  Finally, the warning explained
that, "[i]f this deficiency continues, or other deficiencies
arise," Cellucci might "be immediately discharged or receive
additional discipline."  Id.  After receiving the warning,
Cellucci claims she called Citizens Bank's corporate hotline on
multiple occasions to report unfair treatment and age
discrimination, but there is no record of those calls.  See
Pl.'s Resp. 8; Cellucci Dep. 261:2-7.  Cellucci does not dispute
the performance deficiencies reported in the 2011 annual review
and the final written warning.

In April 2012, Geer contacted ERSC to initiate
termination of Cellucci's employment.  Def.'s Mot. Summ. J., Ex.
18, ERSC Records, ECF No. 20-18.  He explained that, although he
had "seen improvement in [Cellucci's] performance in some areas,
she didn't improve in the core areas" of focus for her region.
Id.  ERSC independently confirmed that Cellucci had not met her
baseline goals for the first quarter of 2012, and then gave Geer
approval to terminate her employment.  Id.  He did so on April
12, 2012.  Pl's. Resp., Ex. I, Def.'s Resp. First Interrog., ECF
No. 21-9.  At that time, Cellucci was 63 years old – the oldest

branch manager under Geer's supervision.  Id.  Geer replaced
Cellucci with Virginia Fleishman, who is eleven years younger
than Cellucci.  Pl.'s Resp., Ex. K, Fleishman Dep., ECF No. 21-
11.

Cellucci was not the only branch manager to face
disciplinary action under Geer's supervision.  As mentioned
above, Geer identified two other branch managers – Cynthia Scott
and Phillip Gerace – as "serial underperformers," placed them on
Performance Improvement Plans, and eventually issued them final
written warnings.  Pl's. Resp., Ex. P, Def.'s Resp. Second
Interrog., ECF No. 21-16.  In August 2011, Geer fired Scott, who
was 55 years old at the time.  In her deposition, Scott said
that Geer had once commented that her salary was large and that
she "must have a big 401(k)," but she did not remember him ever
asking her about retirement or making other age-related
comments.  Pl.'s Resp., Ex. M, Scott Dep. 18:17-20:23, ECF No.
21-13.  Gerace, who is currently 33 years old, voluntarily
stepped down from branch manager and into a banker position at a
different bank branch in September 2011.  Id., Ex. O, Gerace
Dep. 13:1-14:15, ECF No. 21-15.  As of July 15, 2013, he was
still employed by Citizens Bank.  Gerace Dep. 7:19-20.

## II.  PROCEDURAL HISTORY

Shortly after her employment was terminated, Cellucci
filed charges of discrimination with the Equal Employment

Opportunity Commission ("EEOC") and the Pennsylvania Human
Relations Commission ("PHRC"), alleging that she had been
discriminated against because of her age, and that her
termination was in retaliation for complaints of age
discrimination.  After waiting sixty days for the EEOC to act,
she filed the complaint in the instant action, bringing one
count of discrimination and one count of retaliation under the
ADEA.  Compl. ¶¶ 23-29, ECF No. 1.  Citizens Bank answered (ECF
No. 9), and the parties proceeded to discovery.

On May 28, 2013, Cellucci filed a motion for leave to
file an amended complaint, which would add state law claims
under the Pennsylvania Human Relations Act ("PHRA").  ECF No.
17.  Before the Court ruled on that motion, Citizens Bank moved
for summary judgment on all counts in the original complaint.
Cellucci responded on September 6, 2013, and the motion is now
ripe for disposition.

**III. LEGAL STANDARD**

Summary judgment is appropriate if there is no genuine
dispute as to any material fact and the moving party is entitled
to judgment as a matter of law. Fed. R. Civ. P. 56(a).  "A
motion for summary judgment will not be defeated by 'the mere
existence' of some disputed facts, but will be denied when there
is a genuine issue of material fact."  Am. Eagle Outfitters v.
Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting

10

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).
A fact is "material" if proof of its existence or nonexistence
might affect the outcome of the litigation, and a dispute is
"genuine" if "the evidence is such that a reasonable jury could
return a verdict for the nonmoving party."  Anderson, 477 U.S.
at 248.

The Court will view the facts in the light most
favorable to the nonmoving party.  "After making all reasonable
inferences in the nonmoving party's favor, there is a genuine
issue of material fact if a reasonable jury could find for the
nonmoving party."  Pignataro v. Port Auth., 593 F.3d 265, 268
(3d Cir. 2010).  While the moving party bears the initial burden
of showing the absence of a genuine issue of material fact,
meeting this obligation shifts the burden to the nonmoving party
who must "set forth specific facts showing that there is a
genuine issue for trial."  Anderson, 477 U.S. at 250.

## IV.  DISCUSSION

Cellucci claims that her employment with Citizens Bank
was terminated on the basis of her age, in violation of the
ADEA, 29 U.S.C. § 621 et seq.  Compl. ¶ 24.  She also brings a
claim of retaliation, contending that she was fired because of
her complaints about age discrimination.  Compl. ¶ 28.  Citizens
Bank disagrees, saying that Cellucci was fired because of her

11

ongoing poor performance, and that no reasonable juror could find otherwise.

A.   Age Discrimination

The ADEA makes it unlawful for an employer "to discharge any individual ... because of such individual's age." 29 U.S.C. § 623(a)(1).  That prohibition is designed to prevent older workers from "being deprived of employment on the basis of inaccurate and stigmatizing stereotypes," such as the belief that "productivity and competence decline with old age."  Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).  The ADEA therefore commands employers not to use age as a proxy for an employee's actual characteristics, but rather "to evaluate older employees on their merits."  Id. at 611 (alteration and internal quotation marks omitted).

It is well settled that, to succeed on a claim of discrimination under the ADEA, a plaintiff must show that her age "actually played a role" in the employer's decision-making process "and had a determinative influence on the outcome."  Id. at 610.  More recently, in Gross v. FBL Financial Services, Inc., the Supreme Court further held that a plaintiff bringing an age discrimination claim "must prove by a preponderance of the evidence (which may be direct or circumstantial) that age was the 'but-for' cause of the challenged employer decision." 557 U.S. 167, 177-78 (2009).  That is so, the Court explained,

because "[u]nlike Title VII, the ADEA's text does not provide
that a plaintiff may establish discrimination by showing that
age was simply a motivating factor" in the employment action.
Id. at 174.  Rather, under the plain language of the ADEA, the
complained-of action must have been "because of" the employee's
age.  Id. at 176 (quoting 29 U.S.C. § 623(a)(1)).  The burden of
persuasion is therefore always on the plaintiff in an age
discrimination case, and it requires the plaintiff to show that
the adverse employment action would not have occurred but for
the employer's consideration of her age.  Id. at 177.

        A plaintiff can satisfy that burden in one of two ways
– either by demonstrating with direct evidence that age was the
"but-for" cause of the employment action, or by using the
McDonnell Douglas framework to establish that the employer's
proffered reason for the employment action is a mere pretext for
unlawful discrimination.  Smith v. City of Allentown, 589 F.3d
684, 691 (3d Cir. 2009) (concluding that "the but-for causation
standard required by Gross does not conflict with our continued
application of the McDonnell Douglas paradigm in age
discrimination cases").  Cellucci argues that she can satisfy
her burden under either method.

        1. Direct Evidence

        Even before the Gross decision, proving discrimination
by direct evidence was a "high hurdle," as it required that the

13

evidence "reveal a sufficient discriminatory animus" to render
any shift in the burden of production "unnecessary." Anderson
v. Consol. Rail Corp., 297 F.3d 242, 248 (3d Cir. 2002).  To
satisfy that standard, a plaintiff had to present "evidence of
discriminatory attitudes about age that were causally related to
the decision to fire her." Glanzman v. Metro. Mgmt. Corp., 391
F.3d 506, 512 (3d Cir. 2004); see also Salkovitz v. Pioneer
Elec. (USA) Inc., 188 F. App'x 90, 93 (3d Cir. 2006) (not
precedential) (requiring a plaintiff to "show a direct causal
connection between his termination and an alleged animus towards
older employees") (internal quotation marks omitted).  In other
words, the evidence had to "'lead[] not only to a ready logical
inference of bias, but also to a rational presumption that the
person expressing bias acted on it' when he made the challenged
employment decision." Fakete v. Aetna, Inc., 308 F.3d 335, 339
(3d Cir. 2002) (quoting Starceski v. Westinghouse Elec. Corp.,
54 F.3d 1089, 1097 (3d Cir. 1995)).

         Pre-Gross, a plaintiff could meet that burden without
showing that discriminatory animus was the but-for cause of the
adverse action – it was enough to show that the decision-makers
"placed substantial negative reliance on [the plaintiff's age]
in reaching their decision." Id. at 338 (alteration in
original).  If a plaintiff succeeded in showing such reliance,
the burden of persuasion then shifted, and the employer had to

14

"prove that it would have fired the plaintiff even if it had not considered his age."  Id.  In Gross, however, the Supreme Court made clear that such burden-shifting is inappropriate in age discrimination cases, and that the burden of persuasion remains with the plaintiff "even when a plaintiff has produced some evidence that age was one motivating factor in [the] decision." Gross, 557 U.S. at 180; see also id. at 174 (declining to apply the Price Waterhouse burden shifting to ADEA claims).  The Gross holding has therefore altered the direct evidence standard in age discrimination cases in two ways: (1) the plaintiff's direct evidence must do more than "show that age played some minor role in the decision" – it must show that the decision would not have occurred without improper consideration of age; and (2) the defendant no longer bears the burden of proving that it would have taken the action regardless of age.  Kelly v. Moser, Patterson, & Sheridan, LLP, 348 F. App'x 746, 749 (3d Cir. 2009) (not precedential); see also Gross, 557 U.S. at 177 ("An act or omission is not regarded as a cause of an event if the particular event would have occurred without it.").

Cellucci's limited evidence of discriminatory animus is insufficient to meet the post-Gross direct evidence standard.[3]

---

[3]     Although Cellucci cites to the Gross decision, she bases her direct evidence argument on the Price Waterhouse burden shifting paradigm, which after Gross is no longer appropriate in ADEA cases.  See Pl.'s Resp. 13 ("If the employee

The only pieces of evidence that Cellucci points to that suggest any age-based animus are (1) her July 2011 conversation with Geer, during which he commented that Cellucci probably had "a fat 401(k) and a pension" and that "the bank is changing and it needs new younger faces;" and (2) Geer's occasional inquiries as to when she would retire.  Cellucci Dep. 94:1-3, 98:21-99:14, 131:18-132:24, 137:21-138:1.  Assuming <u>arguendo</u> that such comments could support an inference that Geer was biased against older employees, there is no indication of a causal relationship between that bias and Geer's decision to fire Cellucci.  <u>See</u> <u>Glanzman</u>, 391 F.3d at 512.  With regard to the July 2011 comments, they were made almost a year before the contested employment decision, and they were not part of the many conversations Geer and Cellucci had regarding her poor performance and possible termination.  <u>See</u> <u>Ezold v. Wolf, Block,</u> <u>Schorr & Solis-Cohen</u>, 983 F.2d 509, 545 (3d Cir. 1992) ("Stray remarks by non-decisionmakers or by decisionmakers unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of decision.").  As for Geer's retirement inquiries, the Third Circuit has previously concluded that such questions are "not

does produce direct evidence of discriminatory animus, the employer must then produce evidence sufficient to show that it would have made the same decision if illegal bias had played no role in the employment decision.").

direct evidence of age discrimination," as they "could just as easily be explained by a desire on [the employer's] part to do some long-term planning."  Glanzman, 391 F.3d at 513.  Although the combination of the retirement questions and the "younger faces" comment could potentially suggest an age-based bias, Geer's comments fail to "directly show[] the necessary discrimination 'without inference or presumption,'" and thus they do not meet the rigorous direct evidence requirement.  See Salkovitz, 188 F. App'x at 93.[4]

   2. Circumstantial Evidence

        When, as here, a plaintiff is unable to establish a claim of discrimination using direct evidence, she can do so using circumstantial evidence under the familiar McDonnell

---

[4]        Moreover, as discussed in the next section, see infra Section IV.A.2., there is substantial evidence that Citizens Bank terminated Cellucci's employment for reasons unrelated to her age.  Cellucci does not contest that she received a 2 out of 5 rating in two consecutive annual performance reviews, that she consistently failed to meet her sales objectives, and that such results were generally proper grounds for disciplinary action.  Furthermore, the first "2" rating was given to her by her previous supervisor, who she insists was fair in his treatment of her.  In light of that undisputed evidence of Cellucci's poor job performance leading up to her termination, no reasonable jury could conclude that her age played a determinative role in the termination of her employment.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 250-51 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).  Rather, the direct evidence shows that "at most age was a secondary consideration" in the employment decision, which "is insufficient under Gross."  Kelly, 348 F. App'x at 751.

Douglas framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under that three-step framework, the burden of production is first on the plaintiff to establish a prima facie case of discrimination.  Burton v. Teleflex Inc., 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff succeeds in making out a prima facie case, "then the burden of production shifts to the defendant to offer evidence of a legitimate, nondiscriminatory reason for the action."  Anderson v. Wachovia Mortg. Corp., 621 F.3d 261, 271 (3d Cir. 2010) (internal quotation marks omitted). If the defendant provides such a reason, the presumption of discrimination raised by the prima facie case is rebutted, and the plaintiff must show by a preponderance of the evidence that the defendant's explanation is actually a pretext for discrimination.  Id.; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507-08 (1993) (explaining that, if a defendant produces a nondiscriminatory reason for its action, plaintiff has an opportunity to show "that the proffered reason was not the true reason for the employment decision and that race was") (citation and internal quotation marks omitted).  "Throughout this burden-shifting exercise, the burden of persuasion, including the burden of proving 'but for' causation or causation in fact, remains on the employee."  Smith, 589 F.3d at 691 (internal quotation marks omitted).

In an age discrimination case under the ADEA, a plaintiff can establish a prima facie case by demonstrating (1) that she is forty years of age or older; (2) that her employer took an adverse employment action against her; (3) that she was qualified for the position in question; and (4) that she was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.  Id. at 689.  Here, Citizens Bank does not dispute that Cellucci has established the first, second, and fourth of those elements, as it is uncontested that she was older than forty when her employment was terminated, that she experienced an adverse employment action, and that she was replaced by an employee eleven years her junior.  Nonetheless, Citizens Bank argues that Cellucci has not established a prima facie case of discrimination because she cannot show that she was qualified for the position of branch manager.  According to Citizens Bank, Cellucci's ongoing performance deficiencies prevent her from establishing that necessary element of her prima facie case. Def.'s Mot. Summ. J. 16.

The burden of establishing a prima facie case is not meant to be onerous, as that step in the McDonnell Douglas framework merely provides "a sensible, orderly way to evaluate the evidence" to determine whether it is adequate to create an inference of discrimination.  Furnco Const. Corp. v. Waters, 438

19

U.S. 567, 577 (1978); see also Jakimas v. Hoffmann-La Roche, Inc., 485 F.3d 770, 787 (3d Cir. 2007) (citing Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)).  When evaluating the plaintiff's prima facie case, courts should consider a plaintiff's "objective job qualifications," but should leave "the question of whether an employee possesses a subjective quality, such as leadership or management skill, ... to the later stage of the McDonnell Douglas analysis." Weldon v. Kraft, Inc., 896 F.2d 793, 798 (3d Cir. 1990).  Even when a plaintiff lacks the objective background qualifications ostensibly necessary for a position, such as a certain degree or a number of years of experience, the plaintiff's "satisfactory performance of duties, leading to promotion" generally will "establish a plaintiff's qualification for a job." Hugh v. Butler Cnty. Family YMCA, 418 F.3d 265, 268 (3d Cir. 2005). Overall, when a defendant's argument regarding a plaintiff's qualifications is intertwined with its assertion of a legitimate reason for the employment action, courts should be careful not to "collapse the entire McDonnell Douglas analysis in [the] first step." Dorsey v. Pittsburgh Assoc., 90 F. App'x 636, 639 (3d Cir. 2004) (not precedential).

Here, Citizens Bank's argument regarding Cellucci's qualifications is identical to its proffered reason for her termination: she received poor performance evaluations for

multiple years.  Although those evaluations were based in part
on objective measures, such as sales figures, Citizens Bank has
not produced evidence showing that the goals Cellucci was
expected to meet "constituted a standard of performance expected
of all" employees in her position, instead of "a subjective
determination by [her supervisor] of the performance level [she]
had to achieve to be deemed a satisfactory" manager of her
branch.  See Weldon, 896 F.2d at 799.  Furthermore, it is
undisputed that Cellucci performed her job successfully for many
years, and during that period she received a promotion and
several performance awards.  Therefore, as it is clear that
Cellucci was qualified for her job in the past, her more recent
performance deficiencies are more appropriately addressed at the
next stage in the McDonnell Douglas analysis.  Accordingly, the
Court concludes that, for purposes of the first step in the
McDonnell Douglas analysis, Cellucci has shown that she is
qualified for the position of branch manager, and thus has
satisfied the relatively light burden of establishing a prima
facie case of age discrimination.

          The Court therefore turns to Step Two of the McDonnell
Douglas framework, at which point the burden shifts to Citizens
Bank to produce "sufficient evidence to support a
nondiscriminatory explanation for its decision."  Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000).

Citizens Bank has clearly met that burden here, providing evidence that Cellucci's employment was terminated due to her ongoing performance deficiencies.

Once Citizens Bank has stated a non-discriminatory reason for the adverse employment action – in this case, the termination – Cellucci must satisfy Step Three in the analysis, which requires that she "provide evidence from which a factfinder could reasonably infer that the employer's proffered justification is merely a pretext for discrimination." Burton, 707 F.3d at 426.  To make such a showing, the plaintiff must provide evidence "from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a ... determinative cause of the employer's action."  Id. at 427 (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).  A plaintiff can discredit a proffered reason by "demonstrat[ing] such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the employer's explanations for its action "that a reasonable factfinder could rationally find them 'unworthy of credence.'"  Id. (quoting Fuentes, 32 F.3d at 765). Put more simply, a plaintiff "must show, not merely that the employer's proffered reason was wrong, but that it was so plainly wrong that it cannot have been the employer's real

reason." <u>Keller v. Orix Credit Alliance, Inc.</u>, 130 F.3d 1101, 1109 (3d Cir. 1997).

Here, Cellucci makes little effort to rebut Citizens Bank's proffered reason for her termination as implausible or inconsistent.  In fact, Cellucci admits that she consistently failed to meet her sales objectives for two years prior to her termination, and that she received two consecutive "2" ratings on her annual performance evaluations (the first of which was issued by her previous supervisor).  She also does not contest that such "serial underperformance" could be appropriate grounds for termination, nor does she contend that Citizens Bank failed to follow the standard protocol for terminations; rather, the evidence is undisputed that Citizens Bank issued Cellucci two warnings regarding her performance (the PIP and the final written warning) and gave her ample time to demonstrate improvement, which is the same process it used for other employees (and that Cellucci herself used with the employees she supervised).

Nonetheless, Cellucci does identify two potential weaknesses in Citizens Bank's stated reason for its action: (1) Phillip Gerace, a younger branch manager also labeled a "serial underperformer," was not fired, suggesting that Cellucci received disparate treatment; and (2) given Cellucci's "stellar tenure" with Citizens Bank, the "drastic change" in her

evaluations calls into question Citizens Bank's proffered explanation. Pl.'s Resp. 32-33, 35.  Neither alleged weakness stands up to scrutiny.

Cellucci's disparate treatment argument is simply unsupported by the evidence.  It is true that, like Cellucci, Gerace was issued a 2 rating on his 2010 annual review, and then also failed to meet performance goals during the first quarter of 2011.  Therefore, like Cellucci, he was placed on a Performance Improvement Plan.  When he again received a "2" on his 2011 annual review, he was issued a final written warning – again, just as Cellucci was.  At that point, Gerace – on his own accord – found a banker position at a different branch and stepped down from his position as branch manager.[5]  Gerace Dep. 13:1-14:15, 42:5-23.  He therefore was no longer under Geer's supervision, and he presumably was no longer held to the same

---

[5]     Cellucci says that, unlike Gerace, she was not offered (or permitted to assume) an alternative position.  Pl.'s Resp. 33.  But while it is true that at one point Geer offered Gerace the position of assistant manager, Gerace refused that offer, and the position he later assumed he found on his own, without any assistance or suggestion from Geer.  Gerace Dep. 11:12-12:10, 13:10-19; 14:11-15.  Therefore, at best Cellucci has presented evidence that Gerace was offered an opportunity that she was not offered (although notably ERSC records indicate that Cellucci was also offered the option of stepping into a different position).  See ERSC Case No. 404723-0.  Given that the disciplinary actions taken against Gerace and Cellucci were identical up until the point Gerace found a different job, that slight difference in treatment does not suggest that Citizens Bank's stated reason for Cellucci's termination is a mere disguise for unlawful discrimination.

performance standards as a branch manager.[6]  Based on those
undisputed facts, Cellucci cannot show that she was treated
differently than Gerace – in fact, they received identical
treatment up until the point that Gerace voluntarily left his
position.  Citizens Bank's decision not to terminate Gerace's
employment therefore does not undermine the proffered reason for
Cellucci's termination; if anything, Citizens Bank's similar
treatment of Gerace and Cellucci underline supports Citizens Bank's
argument that poor performance, not age, was the basis for its
decision.

     As for Cellucci's argument regarding her "stellar
tenure" and the "drastic change" in her evaluations (Pl.'s Resp.
34-35), that argument cannot undermine the proffered reason
when, as here, the plaintiff does not contest the factual basis
for the poor evaluations.  Indeed, Cellucci not only
acknowledges that she failed to meet her objectives from 2010
onward, she also suggested reasons for that change in her 2011
performance review, explaining that the previous year the city

---

[6]     Cellucci tries to demonstrate that Gerace's
performance was significantly worse than hers by pointing to the
"scorecards" for her branch and the branch that he managed.
Pl.'s Resp., Ex. R, Scorecards, ECF No. 21-18.  But those
scorecards are from March 22, 2012, well after Gerace had left
the branch he used to manage.  Id.; see also Gerace Dep. 9:12-
16.  The disparity between the branches therefore says
absolutely nothing about Cellucci's and Gerace's relative
performance.

had removed the parking for the branch.  2011 Performance
Review.  Furthermore, Cellucci's poor performance evaluations
began when she was supervised by Brian Williams, who she says
was fair in his treatment of her.  Therefore, although it is
true that Cellucci received positive evaluations for many years,
the change in those evaluations – standing alone – is not
evidence of pretext.

In addition to those attempts to rebut Citizens Bank's
proffered explanation for her termination, Cellucci contends
that Geer's allegedly discriminatory comments are themselves
evidence of pretext.  Pl.'s Resp. 28-32.  According to Cellucci,
Geer's "numerous age-related comments ... reflect a
discriminatory animus on the part of Defendants," which could
support a finding that "Geer's decision to terminate Ms.
Cellucci was based on invidious discrimination – and therefore
that the alleged reason for her termination is pretextual."
Pl.'s Resp. 31-32.  In other words, Cellucci argues that, based
upon Geer's comments alone, a reasonable jury could conclude
that Citizens Bank's proffered reason is actually a disguise for
a discrimination, and she "would not have been terminated but
for [her] age."  Connolly v. Pepsi Bottling Grp., LLC, 347 F.
App'x 757, 761 (3d Cir. 2009) (not precedential) (citing Gross,
557 U.S. at 180); see also Smith, 589 F.3d at 692 (deciding

26

whether a "reasonable jury could agree that [employer] terminated [employee] on the basis of age discrimination").

Cellucci's evidence is insufficient to satisfy that standard.  Most (if not all) of Geer's objectionable comments were made outside of the context of the decision-making process and almost a year before Cellucci's termination.  See Ezold, 983 F.2d at 545 (explaining that "stray remarks" that are "unrelated to the decision process are rarely given great weight," particularly when they are "temporally remote from the date of decision").  Given the substantial undisputed evidence of record supporting Citizens Bank's proffered reason for its employment action, Geer's "handful of ... remarks about [Cellucci's] age and retirement plans" lack the probative force necessary for a reasonable jury to conclude that Cellucci was actually terminated on the basis of her age.  See Salkovitz, 188 F. App'x at 94; see also Smith, 589 F.3d at 691 (concluding that, given plaintiff's documented performance problems, employer's references to his age and retirement plans were insufficient to establish pretext); Connolly, 347 F. App'x at 760-61 (holding that evidence of several disparaging comments about plaintiff's age "lack[s] probative force in light of the undisputed evidence of record relating to the stated basis for the termination") (alteration in original).  Put another way, although Geer's comments may support an inference that he harbored some age-

related biases, they do not suggest that Citizens Bank's proffered reason for Cellucci's termination – her undisputed poor performance for multiple years – is a mere pretext for unlawful discrimination.  Accordingly, the Court will grant Defendants' motion for summary judgment as to Plaintiff's age discrimination claim under the ADEA.

B.    Retaliation

In addition to her claim of age discrimination, Cellucci also brings a claim of retaliation under the ADEA, contending that Geer decided to terminate her employment because "she verbally complained, on at least a few occasions, to Geer and Defendants' corporate hotline about age discrimination and harassment within the last several months of her employment." Pl.'s Resp. 36.  Citizens Bank contends it is entitled to summary judgment on this claim because there is no evidence that Cellucci engaged in any protected activity, and, assuming arguendo that there was such evidence, Cellucci cannot establish a causal connection between the protected activity and her termination.  Def.'s Mot. Summ. J. 21-23.

To establish a prima facie case of retaliation under the ADEA, "a plaintiff must show: (1) that s/he engaged in a protected employee activity; (2) that s/he was subject to adverse action by the employer either subsequent to or contemporaneous with the protected activity; and (3) that there

is a causal connection between the protected activity and the adverse action." Fasold v. Justice, 409 F.3d 178, 188 (3d Cir. 2005). Although the causation analysis is highly fact-based, and depends on the particular context in which the events occurred, a plaintiff can generally establish a causal connection by showing that the temporal proximity between the protected activity and the adverse action is "unusually suggestive," or through a combination of timing and other evidence of ongoing antagonism or retaliatory animus. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000). Importantly, "[t]hese are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference." Id. (quoting Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1997)).

Cellucci has failed to produce any evidence suggesting a causal connection between her alleged complaints[7] and her termination. Although she claims that her complaints were close in time to her termination, Cellucci has never alleged with any specificity when she made her complaints, stating only that she called human resources "[s]everal times during the ... last year [she] worked" for Citizens Bank.

---

[7]     Because there is no evidence of causation, the Court need not decide whether Cellucci's evidence of her alleged complaints is sufficient to satisfy the first element of her prima facie case.

Cellucci Dep. 262:1-2.  Beyond that single statement, there is no evidence that Cellucci engaged in any protected activities during the last six months of her employment.[8]  Furthermore, the only evidence Cellucci has presented that could be described as a "pattern of antagonism" consists of Geer's occasional inquiries into her retirement plans, which are plainly insufficient to show a causal connection between her termination and her alleged complaints about age discrimination.  Therefore, as there is no indication of "unusually suggestive" timing of events or other evidence suggesting causation, no reasonable jury could find that Cellucci has established a prima facie case of retaliation.

**V.   CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for summary judgment in its entirety and enter judgment in favor of Defendant on all of Plaintiff's claims.  An appropriate order follows.

---

[8]      Her last documented call to ERSC was in September 2011, and, according to the ERSC notes, it did not involve an allegation of age discrimination.  See ERSC Case No. 404723-0.